**ORIGINAL**

FILED IN CHAMBERS
U.S.D.C. Atlanta

MAY 06 2025

Kevin P. Weimer, Clerk
By: _____ Deputy Clerk



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *v.* | Criminal Indictment |
| IAN PATRICK JACKSON<br>A/K/A "L.G."<br>A/K/A "J.W."<br>A/K/A "K.B."<br>A/K/A "J.S." | №: 25 - CR - 0221 |

THE GRAND JURY CHARGES THAT:

## Background

At all times relevant to this Indictment:

### *The Defendant*

1.   The defendant, IAN PATRICK JACKSON, a/k/a "L.G.," a/k/a "J.W.," a/k/a "K.B.," a/k/a "J.S.," was an individual residing in the Northern District of Georgia.

### *Relevant Individuals and Entities*

2.   Co-Conspirator 1 was an individual residing in the Northern District of Georgia.

3.   Individual A was an individual residing in the Northern District of Georgia and the registered agent for Parkway Media Group, LLC .

4. Individual B was an individual residing in the Northern District of Georgia, a signer on the bank account for Express Xchange LLC, and the registered agent for Express Xchange LLC.

5. Express Xchange LLC ("Express Xchange") was a Georgia limited liability company.

6. Parkway Media Group, LLC ("Parkway Media") was a Georgia limited liability company.

7. KMJ Transport, LLC ("KMJ") was a South Carolina limited liability company.

8. Bamigi Brand ("Bamigi") was a Georgia-based business.

9. Lux Realty Group ("Lux Realty") was a Georgia-based business.

10. Market Yourself LLC ("Market Yourself") was a Georgia-based business.

11. Rare Breed Nation, LLC ("Rare Breed") was a Georgia limited liability company.

12. Elevate Horizon LLC ("Elevate Horizon") was a Georgia limited liability company.

13. The Infinity Group of SC ("Infinity Group") was a South Carolina limited liability company.

14. Faithful Transport Services, LLC ("Faithful") was a South Carolina limited liability company.

15.     PowerHouse Sports Academy LLC ("PowerHouse") was a Georgia limited liability company.

### The Small Business Administration

16.     The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.  The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

17.     As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders.  These loans had government-backed guarantees.

### The Paycheck Protection Program

18.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020 and was designed to provide emergency financial assistance to the millions of Americans who were suffering from the economic effects caused by the COVID-19 pandemic.

19.     One source of relief that the CARES Act provided for was the authorization of up to $349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and utilities, through a program referred to as the Paycheck Protection Program ("PPP").  In April 2020, Congress authorized up to $310 billion in additional PPP funding.

20.   The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses must use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a certain percentage of the PPP loan proceeds for payroll expenses.

21.   The amount of a PPP loan that a small business may have been entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

22.   In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) had to state, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses.

23.   The SBA oversaw the PPP. However, individual PPP loans were issued by private, approved lenders who received and processed PPP applications and

4

supporting documentation, and then made loans using the lenders' own funds, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

*The Economic Injury Disaster Loan Program*

24.     The Economic Injury Disaster Loan ("EIDL") program was an SBA program that provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

25.     Another source of relief provided by the CARES Act was the authorization for the SBA to provide EIDLs of up to $2 million to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having as employees. The EIDL advances did not have to be repaid.

26.     To obtain an EIDL or an EIDL advance for COVID-19 relief, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees and gross revenues and cost of goods sold for the 12-month period preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

27.    EIDL applications were submitted directly to the SBA and processed by the agency with support from a government contractor. The amount of the loan, if the application was approved, was determined based, in part, on the information provided by the applicant about employment, revenue, and cost of goods sold, as described above. Any funds issued under an EIDL or advance were issued directly by the SBA through the United States Treasury. EIDL funds were required to be used for certain purposes, such as working capital to make regular payments for operating expenses, which included payroll, rent/mortgage, utilities, and other ordinary business expenses, and to pay business debt incurred at any time (past, present, or future). If the applicant also obtained a loan under the PPP, the EIDL funds could not be used for the same purpose as the PPP funds.

### Other Relevant Entities

28.    Cross River Bank was a financial institution headquartered in Fort Lee, New Jersey that was insured by the Federal Deposit Insurance Corporation ("FDIC"). Cross River Bank participated in the PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

29.    Celtic Bank was an FDIC-insured financial institution headquartered in Salt Lake City, Utah. Celtic Bank participated in the PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

30.    BlueVine was a company based in Jersey City, New Jersey that paired PPP applicants with lenders by collecting applications, performing underwriting tasks, and

6

submitting approved applications to SBA-approved lenders such as Cross River Bank and Celtic Bank for funding.

31.    Womply, operating out of Laguna Hills, California, was a remote small business solutions company that served as an intermediary to connect applicants with a lender that participated in the PPP program.

32.    Fountainhead SBF LLC ("Fountainhead") was a company based in Florida that engaged in lending to small businesses. Fountainhead participated as a PPP lender to small businesses.

33.    Harvest Small Business Finance LLC ("Harvest SBF") was a financial institution headquartered in Laguna Hills, California. Harvest SBF participated in the SBA's PPP as a lender and was authorized to lend funds to eligible borrowers under the terms of the PPP.

*The Scheme to Fraudulently Obtain PPP Loans with Co-Conspirator 1*

34.    Defendant JACKSON recruited Co-Conspirator 1 to solicit, recruit, and interact with others known and unknown to the Grand Jury, to fraudulently obtain PPP loans for their businesses that they were not eligible to receive.

35.    In turn, and at defendant JACKSON's direction, Co-Conspirator 1 recruited the owners of approximately nine businesses (hereinafter "the Business Owners"), and others known and unknown to the Grand Jury, to fraudulently obtain PPP loans that they were not eligible to receive.

7

36.     At defendant JACKSON's direction, Co-Conspirator 1 directed the

Business Owners to submit falsified SBA Form 2483 PPP loan applications to Cross

River Bank and Celtic Bank, through Bluevine, which contained materially false and

fraudulent information about their monthly payroll and number of employees, as set

forth in the chart below:

| Business | Approx. Date of Submission | Amount of Loan Requested | # of Employees Indicated | Monthly Payroll Indicated | Lender |
|---|---|---|---|---|---|
| KMJ | May 4, 2020 | $300,000 | 16 | $120,000 | Cross River Bank |
| Bamigi | May 4, 2020 | $300,000 | 16 | $120,000 | Cross River Bank |
| Lux Realty | May 5, 2020 | $300,000 | 16 | $120,000 | Cross River Bank |
| Market Yourself | May 6, 2020 | $300,000 | 16 | $120,000 | Celtic Bank |
| Rare Breed | May 8, 2020 | $300,000 | 16 | $120,000 | Cross River Bank |
| Elevate Horizon | May 10, 2020 | $300,000 | 16 | $120,000 | Celtic Bank |
| The Infinity Group | May 11, 2020 | $300,000 | 16 | $120,000 | Cross River Bank |
| Faithful | May 16, 2020 | $300,000 | 16 | $120,000 | Cross River Bank |
| Powerhouse | May 20, 2020 | $300,000 | 16 | $120,000 | Celtic Bank |

37.    Defendant JACKSON provided Co-Conspirator 1 with a template fraudulent IRS Form 941 (also referred to as Employer's Quarterly Federal Tax Returns) that contained false financial figures to support the fraudulent PPP applications. Defendant JACKSON and Co-Conspirator 1 caused each of the Business Owners' loan applications to include at least one false and fraudulent IRS Form 941, which falsely reflected that the business had paid wages, tips, and other compensation of $358,819.00 to 16 employees for at least one quarter of 2019.

38.    While defendant JACKSON initially provided the fraudulent Form 941 for each loan application, later, defendant JACKSON instructed Co-Conspirator 1 to falsify the IRS Forms 941 himself.

39.    Based on the materially false and fraudulent representations and submissions in the PPP loan applications, the IRS Forms 941, and other supporting documentation submitted by the Business Owners, with Co-Conspirator 1's assistance and direction, and at defendant JACKSON's direction, Cross River Bank and Celtic Bank funded the requested PPP loans in the amount of $2,700,000.

40.    The Business Owners each agreed to provide Co-Conspirator 1 a percentage of the loan amount. Co-Conspirator 1, in turned, agreed with defendant JACKSON to provide a portion of his proceeds to defendant JACKSON.

41.    At defendant JACKSON's direction and based on his agreement with Co-Conspirator 1, after the PPP loan funds were deposited in their respective businesses' checking accounts at various banks, the Business Owners, working with Co-Conspirator

9

1, used the PPP loan funds for non-qualifying, non-business-related purposes, including by making checks out to individuals who did not work for their respective businesses, in violation of the terms of the PPP loan program.

### *Parkway Media Fraudulent PPP Loan*

42.    On or about May 3, 2020, defendant JACKSON and Individual A submitted and caused to be submitted a fraudulent PPP loan application on behalf of Parkway Media to Celtic Bank, through Bluevine, seeking approximately $237,500.

43.    The Parkway Media PPP application falsely stated that the company had an average monthly payroll of $95,000 and listed 16 employees.

44.    The Parkway Media PPP loan application included four false and fraudulent IRS Forms 941, which falsely reflected that it had paid wages, tips, and other compensation of $358,819.00 to 16 employees for each quarter of 2019 and also a fabricated Parkway Media bank statement.

45.    Based on the materially false and fraudulent representations and submissions in the Parkway Media PPP loan application and the IRS Forms 941, Celtic Bank funded the requested PPP loan in the amount of approximately $237,500 on or about May 5, 2020.

46.    After the funds were deposited into Parkway Media's bank account at Regions Bank, from on or about May 5, 2020 to on or about May 27, 2020, the PPP loan funds were used for non-qualifying, non-business-related purposes, including checks

10

made payable to individuals who did not work for Parkway Media, in violation of the terms of the PPP loan program.

### The L.G. Fraudulent Applications

47.    Between on or about July 29, 2020 and on or about May 31, 2021, defendant JACKSON, using the alias L.G., fraudulently applied for and received an EIDL loan and two PPP loans.

48.    On or about July 29, 2020, defendant JACKSON submitted, through and by means of an interstate wire, an initial EIDL loan intake application from within the Northern District of Georgia to SBA servers in West Des Moines, Iowa.

49.    The intake application contained materially false information including that L.G. was a sole proprietorship with approximately $171,540.00 in gross revenue for the 12 months prior to the "date of the disaster[,]" which was the outbreak of the COVID-19 pandemic, and that L.G. had 15 employees as of January 31, 2020.

50.    Based on the materially false and fraudulent representations and submissions in the L.G. EIDL loan application, on or about August 5, 2020, the SBA funded the requested loan in the amount of approximately $46,000.

51.    On or about April 29, 2021, defendant JACKSON submitted a fraudulent PPP loan application in the name of L.G. to Fountainhead, through Womply, seeking approximately $20,833. The application included at least three "selfie" photographs of defendant JACKSON with a forged Georgia driver's license with defendant

11

JACKSON's picture and the name L.G. The Georgia driver's license number included on the falsified driver's license belonged to a third individual.

52. On or about May 31, 2021, defendant JACKSON submitted a fraudulent PPP loan application in the name of L.G. to Harvest SBF, through Womply, seeking approximately $29,166. The application included at least three "selfie" photographs of defendant JACKSON with the same forged Georgia driver's license as the April 29, 2021 loan application.

53. Both PPP applications in the name of L.G. falsely stated that his total gross income for 2020 was $104,919.48.

54. Based on the materially false and fraudulent representations and submissions in the L.G. PPP loan applications, Fountainhead and Harvest SBF funded the requested PPP loans in the amount of approximately $20,833 on or about May 14, 2021, and approximately $29,166 on or about June 14, 2021.

### Express Xchange Fraudulent Loan Scheme

55. On or about May 1, 2020, defendant JACKSON submitted or caused to be submitted a fraudulent PPP loan application on behalf of Express Xchange to Celtic Bank, through BlueVine, seeking approximately $240,035.

56. The Express Xchange PPP application falsely stated that Express Xchange had 15 employees and an average monthly payroll of $96,014.

57.    The Express Xchange PPP application also included four fabricated IRS Form 941 for Express Xchange, which falsely reflected that the business had paid wages, tips, and other compensation of $358,819.00 to 15 employees in each quarter of 2019.

58.    Based on the materially false and fraudulent representations and submissions in the Express Xchange PPP loan applications and the IRS Forms 941, Celtic Bank funded the requested PPP loan in the amount of approximately $240,035 on or about May 4, 2020.

59.    In or around May 2020, after the PPP loan funds were deposited in the Express Xchange Regions Bank account, defendant JACKSON, with the assistance of Individual B, used the PPP loan funds for non-qualifying, non-business-related purposes, including checks made payable to individuals who did not work for Express Xchange, in violation of the terms of the PPP loan program, as well as restaurants, spas, phone bills, and credit card bills.

60.    These checks included at least two fraudulent "payroll" checks made payable to defendant JACKSON's alias, "L.G.":

a.  for approximately $9,000 on or about May 7, 2020 (with a memo line notation of "backpay/payroll") and

b.  approximately $5,360.75 on or about May 20, 2020 (with a memo line notation of "payroll").

13

61.     On or about April 4, 2020, an intake application for the Express Exchange EIDL loan was sent, through and by means of an interstate wire, from within the Northern District of Georgia to SBA servers in West Des Moines, Iowa.

62.     The intake application contained materially false information including that Express Xchange had approximately $350,000 in gross revenue for the 12 months prior to the "date of the disaster[,]" which was the outbreak of the COVID-19 pandemic. The application falsely represented that Express Xchange had nine employees as of January 31, 2020.

63.     On or about May 1, 2020, Express Xchange received an initial EIDL grant of approximately $9,000.  That same day, defendant JACKSON issued a check to himself for $9,000 with a memo line of "backpay."

64.     On or about June 3, 2020, defendant JACKSON applied for a $116,000 EIDL loan on behalf of Express Xchange.

65.     On or about June 9, 2020, approximately $115,900 of EIDL loan proceeds was deposited in a Wells Fargo bank account in the name of Express Xchange.

66.     The EIDL loan proceeds were improperly spent on a vacation in Aruba, at hotels in California, at a hotel pool in Texas, on rent, and cash withdrawals made by defendant JACKSON.  These expenditures were inconsistent with the requirements of the EIDL loan program.

67.     Based on the materially false and fraudulent representations and submissions in the Express Xchange EIDL loan application, the SBA funded the

14

requested EIDL loan and grant in a total amount of approximately $125,000 on or about May 1, 2020 and June 9, 2020, respectively.

## Count One

### Conspiracy to Commit Bank Fraud
### 18 U.S.C. § 1349

68.    The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 41 of this Indictment as if fully set forth herein.

69.    From in or about March 2020 through in or about June 2020, in the Northern District of Georgia and elsewhere, the defendant, IAN PATRICK JACKSON, a/k/a "L.G.," a/k/a "J.W.," a/k/a "K.B.," a/k/a "J.S.," and Co-Conspirator 1, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with each other and with others known and unknown to the Grand Jury, to execute a scheme and artifice to defraud a financial institution, the deposits of which were insured by the FDIC, and to obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of the aforementioned financial institution by means of materially false and fraudulent pretenses, representations, and promises and by the omission of material facts, in violation of Title 18, United States Code, Section 1344.

### Object of the Conspiracy

70.    The object of the conspiracy was for defendant JACKSON, Co-Conspirator 1, and others to fraudulently obtain PPP loans and to conceal the conspiracy.

### Manner and Means

71.    The manner and means by which defendant JACKSON, Co-Conspirator 1, and others sought to accomplish the object of the conspiracy included, among others, the following:

72.    Defendant JACKSON and Co-Conspirator 1 conspired to submit and cause to be submitted materially false and fraudulent documents, including an SBA Form 2483 PPP loan application and IRS Form 941, to Cross River Bank to obtain $300,000 PPP loans for KMJ, Bamigi, Rare Breed, Lux Realty, The Infinity Group, and Faithful as described in paragraphs 36 through 39.

73.    As a result of and based on defendant JACKSON's and Co-Conspirator 1's materially false representations and certifications and falsified supporting documents, Cross River Bank, a federally insured lender, issued $300,000 PPP loans to KMJ, Bamigi, Rare Breed, Lux Realty, The Infinity Group, and Faithful.

74.    Defendant JACKSON and Co-Conspirator 1 conspired to submit and cause to be submitted materially false and fraudulent documents, including an SBA Form 2483 PPP loan application and IRS Form 941, to Celtic Bank to obtain $300,000 PPP loans for Market Yourself, Elevate Horizon, and Powerhouse as described in paragraphs 36 through 39.

75.    As a result of and based on defendant JACKSON's and Co-Conspirator 1's materially false representations and certifications and falsified supporting documents, Celtic Bank, a federally insured lender, issued $300,000 PPP loans to Market Yourself, Elevate Horizon, and Powerhouse.

76.    Defendant JACKSON and Co-Conspirator 1further conspired to use the PPP loan funds for non-business expenses, including by making payments to themselves and individuals who did not work for the PPP loan recipients, in violation of the terms of the PPP loan agreement.

All in violation of Title 18, United States Code, Section 1349.

**Counts Two and Three**
Bank Fraud
18 U.S.C. § 1344 and § 2

77.    The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 46 and 70 through 76 of this Indictment as if fully set forth herein.

78.    On or about the dates identified below, in the Northern District of Georgia and elsewhere, the defendant, IAN PATRICK JACKSON, a/k/a "L.G.," a/k/a "J.W.," a/k/a "K.B.," a/k/a "J.S.," and others known and unknown to the Grand Jury, did knowingly execute and attempt to execute a scheme and artifice to defraud the financial institutions identified below, the deposits of which were then insured by the FDIC, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of the listed financial institutions:

| Count | Bank | Business | Approximate Date of Execution | Act of Execution |
|-------|------|----------|-------------------------------|------------------|
| 2 | Cross River | Faithful | May 16, 2020 | Submission of PPP Loan Application |
| 3 | Celtic Bank | Parkway Media | May 3, 2020 | Submission of PPP Loan Application |

All in violation of Title 18, United States Code, Section 1344 and Section 2.

**Counts Four and Five**

Wire Fraud
18 U.S.C. § 1343 and § 2

79.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 33 and 47 through 67 of this Indictment as if fully set forth herein.

80.     On or about the dates identified below, in the Northern District of Georgia and elsewhere, the defendant, IAN PATRICK JACKSON, a/k/a "L.G.," a/k/a "J.W.," a/k/a "K.B.," a/k/a "J.S.," and others known and unknown to the Grand Jury, having knowingly devised and attempted to devise a scheme and artifice to defraud the SBA, for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme or artifice, specifically:

| Count | Business | Approximate Date of Execution | Interstate Wire in Furtherance |
|-------|----------|-------------------------------|--------------------------------|
| 4 | L.G. | July 29, 2020 | Submission of EIDL Loan Intake Application from Northern District of Georgia to Iowa |
| 5 | Express Xchange | April 4, 2020 | Submission of EIDL Loan Intake Application from Northern District of Georgia to Iowa |

All in violation of Title 18, United States Code, Section 1343 and Section 2.

18

**Counts Six and Seven**
Money Laundering
18 U.S.C. § 1956(a)(1)(B)(i) and § 2

81.    The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 33 and 55 through 67 of this Indictment as if fully set forth herein.

82.    From in or about March 2020 through in or about November 2020, in the Northern District of Georgia and elsewhere, the defendant, IAN PATRICK JACKSON, a/k/a "L.G.," a/k/a "J.W.," a/k/a "K.B.," a/k/a "J.S.," and others known and unknown to the Grand Jury, knowingly conducted and attempted to conduct a financial transaction in and affecting interstate commerce, which involved the proceeds of a specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity:

| Count | Approx. Date | Description of Transaction |
|-------|-------------|---------------------------|
| 6 | May 7, 2020 | Issuing a fraudulent backpay/payroll check in the name of "L.G." for approximately $9,000 |
| 7 | May 20, 2020 | Issuing a fraudulent payroll check in the name of "L.G." for approximately $5,360.75 |

All in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

**Forfeiture**

83.    Upon conviction of one or more of the offenses alleged in Counts One through Five of this Indictment, defendant JACKSON shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any property constituting, or

19

derived from, proceeds the person obtained directly or indirectly as the result of such violation, including but not limited to the following:

(a)  MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Five of this Indictment.

84.  Upon conviction of the offenses alleged in Counts Six and Seven of this Indictment, defendant JACKSON shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the following:

(a)  MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts Six and Seven of this Indictment.

85.  If, as a result of any act or omission of the defendant, any property subject to forfeiture:

(a)  cannot be located upon the exercise of due diligence;

(b)  has been transferred or sold to, or deposited with, a third party;

(c)  has been placed beyond the jurisdiction of the Court;

(d)  has been substantially diminished in value; or

(e)  has been commingled with other property which cannot be divided without difficulty;

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any

other property of the defendant up to the value of the forfeitable property.

A _____ *True* _____ BILL

_____
FOREPERSON

RICHARD S. MOULTRIE, JR.
 *Acting United States Attorney*

DIANE C. SCHULMAN
 *Special Assistant United States Attorney*
Georgia Bar No. 496674

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

LORINDA I. LARYEA
 *Acting Chief, Fraud Section*
 *U.S. Department of Justice*

MATTHEW REILLY
 *Trial Attorney, Fraud Section*
 *U.S. Department of Justice*
N.Y. Bar No. 5130935

1400 New York Ave, NW
Bond Building, 3rd Floor
Washington, DC 20005
202-320-8523; Fax: 202-514-3708